```
                                                                      1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

     - - - - - - - - - - - - -    X

     UNITED STATES OF AMERICA,    :    20-CR-142(ENV)

                Plaintiff,        :
                                       United States Courthouse
          -against-               :    Brooklyn, New York

     MOUSTAFA AYOUB,              :
                                       April 1, 2020
                Defendant.        :    2:00 o'clock p.m.

     - - - - - - - - - - - - -    X


         TRANSCRIPT OF BAIL APPLICATION BY TELECONFERENCE
            BEFORE THE HONORABLE RAMON E. REYES, JR.
                 UNITED STATES MAGISTRATE JUDGE.


     APPEARANCES:

     For the Government:          RICHARD P. DONOGHUE
                                  Acting United States Attorney
                                  BY: JOSHUA G. HAFETZ
                                      JONATHAN E. ALGOR, IV
                                  Assistant United States Attorneys
                                  271 Cadman Plaza East
                                  Brooklyn, New York


     For the Defendant:           WINDELS MARX LANE & MITTENDORF
                                  156 West 56th Street
                                  New York, NY 1001

                                  BY: BRADLEY D. SIMON, ESQ.
                                      JEREMY WEINSTEIN, ESQ.


     Court Reporter:              Charleane M. Heading
                                  225 Cadman Plaza East
                                  Brooklyn, New York
                                  (718) 613-2643

     Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.


                 CMH     OCR     RMR     CRR     FCRR
```

2

1  (All present by teleconference except defendant.)
2  THE CLERK:  This is criminal cause for a bail
3  application, 20-CR-142, United States versus Moustafa Ayoub.
4  Counsel, starting with the government, please state
5  your appearances.
6  MR. HAFETZ:  Good afternoon, Your Honor.  On behalf
7  of the United States, Joshua Hafetz and Jonathan Algor.
8  MR. SIMON:  Good afternoon, Your Honor.  This is
9  Brad Simon on behalf of Mr. Ayoub.  Jeremy Weinstein is also
10 present.
11 THE COURT:  Good afternoon.
12 Mr. Simon, this is your application.  Go ahead.
13 MR. SIMON:  Yes.  Thank you, Your Honor.
14 The purpose of this application is not to relitigate
15 the prior proceedings, but I just do want to note that
16 Mr. Ayoub was, a permanent order of detention was not entered
17 and Pretrial has all along said that there were certainly
18 conditions that, you know, would, would be available for his
19 release, they were not asking for permanent detention, but the
20 purpose of this letter is basically to point out, ask the
21 Court for relief due to the extraordinary circumstances that
22 are taking place with the pandemic.
23 It is -- I think it's only a matter of days before
24 there is a massive outbreak within the MDC.  Since we
25 submitted this letter, we understand that there are additional

1  cases now that have, additional inmates that have tested
2  positive and we're not able -- we think it's a threat to all
3  of the detainees but we only represent Mr. Ayoub so we are
4  here on his behalf.
5          Mr. Ayoub is older than most of the detainees.  He's
6  approaching 50.  He has not been found to be a danger to the
7  community in any way and originally, Magistrate Levy had, you
8  know, ordered his release on home confinement and we are here
9  today because of the really dire situation to ask that
10 Mr. Ayoub be released.
11         You know, it's just impossible to observe the
12 protocols that are in place in the outside world at the MDC
13 where everybody is in close quarters and social distancing is
14 simply impossible and I think we're going to, it's only a
15 matter of days before there are massive outbreaks within the
16 MDC and we feel it's incumbent to seek relief on behalf of
17 Mr. Ayoub and that's really what this application is about.
18         So we would ask for that relief, Your Honor.
19         THE COURT:  On what do you base the contention that
20 there are additional cases of positive COVID-19?
21         MR. SIMON:  Through, through Mr. Ayoub who has
22 reported that to me.
23         THE COURT:  Mr. Hafetz, do you want to respond?
24         MR. HAFETZ:  Yes, briefly, Judge.  Thank you.
25         On the question of the flight risk, I don't think,

4

1  unless Your Honor has questions about that, I'm going to
2  address that more than to say two quick things.
3          One, at no point have I suggested or intended to
4  suggest that Judge DeArcy Hall issued a permanent order of
5  detention.  She was explicit and it's clear in the transcript
6  that I submitted as an exhibit that she said there might be
7  conditions under which Mr. Ayoub might secure his release.
8          She specifically said, "I'm not certain I'm prepared
9  to do so," meaning to enter a permanent order, "which leaves
10 open the door that Mr. Ayoub can prepare a different package
11 that perhaps he could be secured."  That was after --
12         THE COURT:  Just one second.  I'm surprised by both
13 what you and Mr. Simon have said, that there is no permanent
14 order of detention, because I'm looking at Exhibit, one of the
15 exhibits to Mr. Simon's letter and there's an order of
16 detention pending trial and my understanding after doing this
17 for 14 years is that's a permanent order of detention.  We
18 have two types of orders:  A temporary order, this is a
19 different form that we fill out, and we have a permanent order
20 which is the one I'm looking at, order of detention pending
21 trial.  Albeit, we do leave people options of reopening and
22 presenting bail packages but it's a permanent order.
23         MR. HAFETZ:  Judge, you're absolutely right.  I
24 apologize for being inaccurate in my response.  What I'm
25 intending to say and respond to is what was in the most recent

1  filing because I want to make sure there's no conception that
2  anyone is trying to hide the ball.  I submitted that
3  transcript to you.
4      The point is, the point is Judge DeArcy Hall did do
5  exactly what you just said.  She issued a permanent order of
6  detention and made a, left it open saying a different bail
7  package might be offered by the defendant that could secure
8  his release.  She did not say it was impossible.  In fact,
9  when she asked me that question, I responded in the same way
10 and that's on pages 23 and 24 of the transcript.
11     The operative point that I'm trying to make just on
12 the issue, because several pages of the defendant's filing
13 before Your Honor deal with the question of his risk of flight
14 or lack thereof, she found him to be a risk of flight.  That's
15 the basis of the detention.  What she found was the two
16 properties together and separate that he offered were not
17 suitable to secure that risk and that was a significant dollar
18 amount that was being offered.  So there is no question, I
19 think, at this point, that he is a flight risk.  That's been
20 found by the District Court already.
21     The question is, the one Your Honor asked, on what
22 basis would he be released, and as to your first question to
23 defense counsel, Your Honor, I am not aware of any additional
24 cases from the MDC.  What I am aware today -- I'm not saying
25 that's impossible.  I'm not sitting in the jail right now.  I

1  don't know that.  I will say that I have an update as of a
2  couple of minutes ago from my office who last spoke to
3  someone, to an attorney for the BOP at the jail today that the
4  update was that the one person who had tested positive to date
5  and was referenced in defense counsel's letter has actually,
6  is now out of quarantine and has recovered.
7          So I'm not saying there will be no new cases.  I
8  don't know.  Obviously, we're all living in this pandemic.
9  What I know is the only basis that Your Honor has now that
10 there are more cases is from the defendant himself who as I
11 set forth to the Magistrate Court and the District Court has
12 already lied to the court about risk.
13         MR. SIMON:  You know, Mr. Hafetz, Mr. Hafetz, I
14 think you may rue your comments in a few days when there's a
15 massive outbreak.  So I think we have to take this very
16 seriously and, you know, I think it will be a very different
17 story three or four days from now.
18         MR. HAFETZ:  I'm only responding to the questions
19 asked.
20         If I could finish without interruption, I'll just
21 finish very quickly, Judge.  I'm answering your question which
22 is my news is that there is none.  Again, I'll say it again,
23 I'm not undermining this or taking it not seriously.  I'm
24 saying I'm not aware of any new cases.
25         My last point is there is no basis, no compelling

basis for Mr. Ayoub to be released at this point. We've made that clear in our papers. He is not, even by the BOP's own assessment of people which is pretty broad for this at risk category, he's not at risk. He's not claiming he is. A generalized concern for the virus is not a ground for his release, particularly given his significant flight risk which as I pointed out has only grown after he was indicted.

MR. SIMON: As far as flight risk, where do you expect he could go under these circumstances?

MR. HAFETZ: Judge, am I answering questions from defense counsel? I'm happy to.

MR. SIMON: Well, you're saying his risk of flight has grown. There are no flights leaving anywhere and countries are not accepting people. So the notion that his risk of flight has grown is, I take strong exception to.

THE COURT: Mr. Simon --

MR. SIMON: You had based your argument on the fact that he had a passport from Belize. Belize has closed down their airports.

THE COURT: Mr. Simon, let's put it this way.

Back on March 2nd when Judge DeArcy Hall ruled that the bail package that was proposed was insufficient, she found him to be a flight risk. She didn't say that risk was insurmountable, but just that the current package that was being offered then was insufficient.

8

1 What package are you proposing now?

2 MR. SIMON: Well, Judge, we don't have a new
3 package. This application is simply, was simply based on the
4 current situation that we're dealing with and the exceptional
5 circumstances.

6 THE COURT: Your argument is, in essence, that
7 everyone at MDC who is not a danger to the community should be
8 let out on a bond.

9 MR. SIMON: Well, I'm not arguing on behalf of a
10 class. I just have one client.

11 THE COURT: I understand that. The logical, the
12 logical extension of your argument is that everyone should be
13 let out who is not a danger to the community because there is
14 this risk of COVID spread in the facility and I mean that's
15 really what it is.

16 MR. SIMON: Well, I mean, every case has particular
17 facts but, but I think, in a sense, you're correct, Judge, and
18 I believe even the Attorney General has been urging the
19 release of as many people as possible because of these
20 extraordinary circumstances.

21 THE COURT: I don't believe it goes so far as people
22 who are not at risk with developing complications due to
23 COVID-19, in other words, people who are not in the risk
24 category that are clearly identified.

25 Look, I hear what you're saying and it's not

1  illogical, your argument, but it's not enough to carry the day
2  today.  I only know of one positive COVID test in MDC and I'm
3  certainly going to follow up with my colleagues and with MDC
4  about other possible positive tests, but I don't think
5  releasing Mr. Ayoub is warranted here.
6           I invite you, should you desire, to take it upstairs
7  to Judge Vitaliano.  I will ask the court reporter to prepare
8  a transcript of this proceeding so he has that should an
9  appeal be taken, but I'm denying the application.
10          MR. SIMON:  All right.  Thank you, Judge.
11          THE COURT:  Thank you, everyone.
12          MR. FELIX CHIN:  Thank you, Judge.
13          (Matter concluded.)
14
15
16
17                    *    *    *    *    *
18
19 I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
20
21     /s/ Charleane M. Heading              May 21, 2020
   _____       _____
22       CHARLEANE M. HEADING                    DATE
23
24
25

             CMH     OCR     RMR     CRR     FCRR